Good morning. This is the time set for oral arguments in the state motion that the government filed in case number 26-1044, Bautista v. United States Department of Homeland Security. We'll hear from the government. May it please the court, Drew Ensign, Deputy Assistant Attorney General for the United States. I'd like to reserve four minutes for rebuttal. This appeal arises from a flare-up of judicial immodesty. Thousands of habeas petitions raising the same section 1225 detention issues are pending or have been resolved in the 94 district courts, which have reached divergent answers. That issue is further presently percolating in all 11 numbered circuits, with the government so far prevailing in the first two circuits that have conclusively resolved the merits. If the circuit courts also reach conflicting answers, it is likely that the issue will be resolved by the Supreme Court. In short, the federal judiciary is operating precisely as it should and just as Congress designed for it to do. That was sufficient for hundreds of district judges who properly stayed within their respective lanes and decided the individual petitions presented, but not for the judge below. She instead decided to preempt the issue for hundreds of her colleagues, but in doing so, she committed several legal errors that justify a stay pending appeal. Most obviously, the district court's class-wide relief flies in the face of the rules of habeas jurisprudence, in particular the district of confinement and immediate custodian rules. Plaintiffs do not even contend that the judgment below can be sustained if the rules of habeas apply to it, and that they plainly do. As the Supreme Court's decision in JGG makes plain, because plaintiffs, quote, claims for relief necessarily imply the invalidity of their confinement, end quote, they must be brought in habeas. So the plaintiffs, I think, argue, well, we can bring this under the APA. So you disagree. Why? Precisely for the same reasons in JGG. Their claims attack the validity of their detention. They are being detained under section 1225, and plaintiffs' claims are the government is utterly without authority whatsoever to detain them for even a minute under section 1225. As the Supreme Court recognized in JGG, that sort of attack on the statutory authority to detain someone has to be brought in habeas, and that goes even more strongly because this is an APA claim, and section 704 of the APA provides that the APA does not provide a cause of action when there's alternative relief that's available, and alternative relief is plainly available here under habeas, and indeed, hundreds of aliens, or perhaps thousands, have received relief in habeas. And so for all... Do you see a distinction between the habeas and a request for relief, as opposed to a challenge to the procedure to not even invoke a bond hearing? I don't believe so, Your Honor, and I think that kind of operates on two levels, so I'd like to address both, if I may. The first is what the relief they're seeking necessarily implies the invalidity of their detention. In fact, frontally assaults it. The declaratory relief they're seeking says the government's authority to hold them under section 25 does not exist whatsoever, full stop. That doesn't just imply the invalidity of their detention. It frontally assaults it, and so I think under the rule of JGG, it clearly applies, and I think while the ultimate relief that they are seeking may be additional procedures, that's not how it operates here. Here, what it is is they're frontally attacking their detention under 1225. The result of that may be that they could be detained under 1226, and that would provide additional procedures, but that's not the nature of their attack. Their attack is on the 1225 detention itself, and you saw that in JGG specifically, and that was actually the position of the the dissent there of, like, you don't need to bring it in habeas because this challenge to detention under the AEA doesn't necessarily imply the invalidity of their detention because they could probably be held separately under INA-based detention statutes, but that was the position of the dissent and not the majority. Like, the majority prevailed there and made clear that though alternative detention statutes might be available, the fact that your attack implies the invalidity of your detention means it has to be brought in habeas, and I think this is an even stronger case than JGG because in JGG, they were really challenging their removal, and that just happened to necessarily imply the government's inability to detain them as well as to remove them, but here you have a frontal assault on their ability, the government's ability to detain people under section 1225, so I think the the result is even more appropriate here. How about the the district court's post-judgment order that vacated the BIA decision? Where do you think the district court erred there? In several different ways, your honor. I think the simplest is just that there was no jurisdiction to do so because final judgment had been entered and a the district court explicitly refused to grant such a vacator, expressly saying that such relief was barred because petitioners, quote, failed to include any such requests, dot, dot, in their amended complaint, end quote, and it further acknowledged that it was not part of the declaratory judgment and, in fact, described it as, quote, a new subject of relief, end quote, not encompassed in petitioner's claim. So I don't think there's any fair argument that the vacator somehow extends from the declaratory judgment. It wasn't just separate from it, it was explicitly refused beforehand, and so under the ordinary rules of cross appeals, you know, if petitioners wanted to challenge that explicit refusal to grant them the vacator of Hurtado that was entered pre-judgment, the only way for them to do so was to take a cross appeal. The Judge Sykes seems to have viewed it as just part of enforcing a judgment that she already entered. Which I think it can't be here. I mean, here you have an explicit refusal to grant that relief beforehand and on the basis that it wasn't pled, and that was a legal determination that stands and can't be changed while it's on appeal. There might be some more, you know, tougher line drawing exercises where it's tougher to see if the relief is an infatuation of the declaratory judgment or something else, but here you have an explicit refusal to grant it based on that legal holding beforehand, 180 degree reversal after a notice of appeal is entered, and an explicit recognition that it is an entirely separate form of relief and not part of the declaratory judgment. To what extent is this issue just dependent on the other issue? If hypothetically you're correct on the nationwide piece of this, does this part just fall of its own accord? I would think so, your honor, and so, you know, I think you don't necessarily need to reach it. I think you could also avoid reaching it in this case because in here, we have argued that they haven't complied with the rule, not only the district of confinement, but also the immediate custodian rule, and plaintiffs have not offered any response to that. So, if this properly sounds in habeas, you don't have any argument before you that any of the relief can be justified, and I think it could be stayed on that basis as well. So, are there alternatives? Did the district court have other alternatives of contempt for other paths other than vacating the BIA decision if she felt that the government was defying the order? Potentially, your honor, I certainly don't think contempt applies where there's a coercive remedy that's not being complied with. That's precisely what a declaratory judgment is not supposed to be. There are potential other theoretical remedies, and I think there are many permutations of that. I mean, you know, I think another way you're not seeing this judgment effectuated is this is theoretically a B2 non-opt-out class that doesn't appear to be preventing anyone from bringing independent suits, and so perhaps the district court could be issuing relief that would, you know, effectuate the non-opt-out nature of its class, and so, you know, perhaps there's something there, but I certainly don't think contempt is on the table. Contempt is available for coercive remedies, and declaratory judgments assuredly are not one. Did the district court issue any injunctive relief or just declaratory? Just declaratory relief, and any injunctive relief on a class-wide basis would have squarely violated section 1252F1. I think that's why. I assume that's why this is framed solely as relief, correct, because of the prohibition on injunctions. I assume so as well. I obviously don't know what was in the district court's head, but it seems very much like this is declaratory relief that is intended to operate like an injunction but can't be an injunction because of 1252F1. And I think the nature of it, too, the improper nature of universal relief, which is entered here under the Supreme Court's decision in CASA, the Supreme Court has recognized that causes irreparable harm to the government when there's improper universal relief. That was a very recent holding, and we think it controls here as well and satisfies the irreparable harm requirement. Do you want to reserve for rebuttal? Yes, Your Honors. Thank you. Mr. Adams, good morning. Good morning. May it please the Court, Matt Adams with Northwest Immigrant Rights Project on behalf of plaintiffs' appellees. Defendants' primary argument misstates the nature of the class and the relief sought. Defendants essentially seek to reframe plaintiffs' claim and reframe the relief provided by the court, but they flatly err in asserting that plaintiffs are not challenging the validity of the procedures of their confinement. Plaintiffs readily concede that they are subject to confinement under the Immigration and Nationality Act. What they challenge is defendants' refusal to provide the procedures that are associated with their detention by pointing to a separate section that would deny them their bond hearings. But critically, the district court's order provides no prospective directive. It does not require that any defendant release any plaintiff. It does not even require defendants to initiate scheduling bond hearings. Instead, it confirms the section of the Immigration and Nationality Act under which plaintiffs are detained and thereby clarifies and confirms their entitlement to a bond hearing. Doesn't that echo in many respects Justice Sotomayor's dissent in the JGG case? I think there's two points I'd make about it. Certainly, Justice Sotomayor took a broader version of the relief that was available beyond habeas, but that was her dissenting opinion. The majority opinion focused on the fact that the Alien Enemies Act precludes judicial review, and that's what their judgment held. Challenges, and I'm quoting, challenges to removal under the Alien Enemy Act, a statute which largely precludes judicial review, must be brought in habeas. But that stands in stark contrast to the Immigration and Nationality Act, which does not preclude judicial review. You have cases that have recently gone before the Supreme Court, like Nielsen v. Priap, like Aleman. Those are class actions under the APA. Now, defendants erred in trying to minimize Priap, asserting that that was a habeas class. And while one of the two combined classes was a habeas class, the Corey class in there was not a habeas class. Instead, just like this case, the individual plaintiff sought habeas reliefs, but the only relief sought on behalf of the class was declaratory and injunctive relief. I mean, I guess the question would just be under JGG, why doesn't this necessarily imply the invalidity of the detention under 1225 in the same way that in JGG it did so as under the AEA? Because they are not contending that they are not subject to confinement. They're only contending that the government is applying the wrong statute here. They have an opportunity to challenge the procedures of their confinement, and the Supreme Court's precedent in Prisor made clear that it's the relief that's sought that determines whether the sole remedy lies in habeas. Here, the relief they sought is not to challenge their confinement. Class members are not seeking their release. They're seeking clarification of the procedures that govern their confinement. But I mean, looking like throughout the district court filings, there's references to petitioners being unlawfully detained, being unlawfully held. So why does that not imply the invalidity of the detention? They're certainly unlawfully detained to the extent that they're being denied these procedural safeguards. But that was true in Prisor as well. That was true in, you know, we cited both with the Skinner case, but also, I'm sorry, I'll pull that up quickly, but the other case that we cited was challenging the procedures of parole. So those were individuals who... Wilkinson, perhaps. I'm sorry? Was that Wilkinson? Wilkinson. Thank you. Yes. And Wilkinson and Skinner, just like Prisor, are confirming that where the petitioners or the plaintiffs are challenging the procedures, attacking their confinement, not that they're unlawfully confined, but rather that the procedures prevent them from securing their release. I should say not that they were originally unlawfully confined, but instead of challenging those procedures that deny them the opportunity for release, then the sole remedy does not lie in habeas, that they have an opportunity. And in this case, unlike JGG, there is, in fact, other mechanisms of judicial review. I mean, in essence, JGG was creating a rule that was unique to the Alien Enemies Act because the statute makes clear that there is no judicial review outside of habeas. And so to challenge one's detention or removal under the Alien Enemy Act was to necessarily challenge the validity of their confinement and require that it be brought in habeas. So if this is properly regarded as sounding in habeas, do you agree that the declaratory relief on a nationwide basis was improper? I don't, but I don't think we need to reach that. There have certainly been nationwide habeas classes that the Supreme Court has entertained, like the Schall decision. But again, this is not a nationwide habeas class. And what we have here is a class that, again, contains no perspective directive and no instruction that anyone be released, not even requiring that the defendants initiate bond hearings. Instead, it's confirming their rights. Now, defendants complain about the chaos that has been sown based upon what they say is the Supreme Court's nationwide scope of the class. But that is a direct result of defendants' refusal to comply with the declaratory judgment. And we see this not just on the nationwide basis, but also in the individual district class actions before this court. In Rodriguez-Vazquez, again, the defendants have refused to comply with the declaratory judgment. And notably, even when this court entered the administrative state, they expressly exempted from that state the Central District of California. And yet defendants have continued to deny bond hearings to class members, even in the Central District of California. Let me ask you then about the BIA precedent and the vacatur. So in your brief, you've indicated that given that there was a prior declaratory judgment appeal, the court had the authority to enforce the judgment, but lacked jurisdiction to alter or expand the judgment. So I'm trying to figure out where you draw the line, because it would seem to me that we have a jurisdictional deficiency here because the post-judgment order and post-appeal order appeared to alter or expand the judgment. What is your position on that? Courts have repeatedly affirmed that in providing relief under 28 U.S.C. 2202, a party may seek relief that they need not have demand, and I'm quoting now from the Horne decision from the D.C. Circuit, need not have demanded or even proved in the original action for declaratory relief. And so while the district court originally found that it was unnecessary and improper to vacate matter of Yahouri, the district court did so by reasoning that, quote, interpretation in Yahouri Hurtado, which contradicts the court's reasoning, is no longer controlling. And so the court said there's no need for me to even vacate Yahouri Hurtado. I've already vacated the DHS policy, which says the same thing. I've already declared that class members are detained subject to 1226, not 1225. There's no need for us even to go and address Yahouri Hurtado. But the court did. The court vacated. I mean, that might be the case. The court could have left, I suppose, well enough alone. But instead, the court actually vacated the Hurtado decision. So that does seem to me to be a bit different than the argument that you're making. The court subsequently did. But I think it's critical to look at why the court then changed course. Because after the court issued the declaratory judgment, defendants expressly relied on the court's refusal to vacate Yahouri Hurtado as justification for their continued defiance of the law. The chief immigration judge issued a directive to all the immigration judges in the country saying that the court's declaratory judgment is only a declaratory judgment and it's not binding, that Yahouri Hurtado remains binding. And it was because the defendants relied expressly on the court's decision not to vacate Yahouri Hurtado that the district court then changed course and said, pursuant to 28 U.S.C. 2202, it's now not only necessary but proper for me to vacate Yahouri Hurtado. And do you think that the district court has jurisdiction under the INA to vacate a BIA ruling? Under the Administrative Procedure Act, certainly. Because the the Administrative Procedure Act authorizes the district court to set aside unlawful agency action. Now the government argues, well, a board of immigration appeal decision should be challenged on a petition for review under 1252. But this is not an order of removal. It's a detention order. A matter of Yahouri Hurtado was not a decision ordering someone to be removed. And as the Supreme Court said in Jennings v. Rodriguez, those jurisdiction channeling provisions at 1252, A-5, and B-9 do not impede a challenge to an agency interpretation or policy and don't require that those be brought on a petition for review. In essence... If we were to disagree with you on habeas, would that resolve this vacation issue? Because as I understand it, you'd be saying... Yeah, no, I don't believe... I'm sorry. I think she's frozen. I don't mean to cut off Judge McEwen. But I don't believe that... Judge McEwen, can you just repeat your question? We had a little pause in the video. Oh, all right. Yes. It would seem to me that if we were determined there's a habeas case, then my understanding of your argument is that we wouldn't need to necessarily reach Yahouri Hurtado, according to both you and the government. But if there is also a companion APA case, then there may be authority for the vacation. But if there is no companion APA case, where does that leave you? One, to be clear, plaintiffs never sought habeas relief on behalf of the class. The complaint only brings a habeas challenge for the individual named plaintiffs. So there is no companion habeas class with the APA. It's focused on the APA. But if this court were to determine that the class can only proceed as a habeas, that would not preclude a district court from vacating the board's decision in Yahouri Hurtado. Essentially, the government... May I just stop you there? And that might be true if the case were still in the district court. The question is whether we have jurisdiction post appeal. And that goes back to, did the district court have the authority to issue a judgment post appeal, issue this additional relief post appeal? And the courts have made clear that a district court retains authority to issue relief under 2202, even post appeal, so long as that relief does not alter or expand upon the judgment. And so that's the question. Does vacating Yahouri Hurtado expand or alter the judgment, the issue that's now on appeal before this court? And we would respectfully submit that it does not. As the district court has already found that the government's position, their policies, whether it's from the DHS policy or whether it's just a straightforward analysis of 1226 versus 1225, the district court has already ruled that 1226 is controlling. The decision vacating Yahouri Hurtado does not alter that analysis, does not amend that judgment. That same core issue- Does it expand it though? I don't believe so. Because if you have the district court hearing your argument below and specifically rejecting inclusion of that argument in the initial judgment, but now changing the judgment, isn't that an expansion of the judgment? I don't believe so. I think that is relief afforded under 2202. As noted, several circuits have confirmed that 2202 provides the court authority to give relief to secure a declaratory judgment that need not have even been demanded or proved in the original action. And that's what you have here. You have defendants, even before this court, if you look at their reply from page 10, continuing to insist that a declaratory judgment is not binding, continuing to insist that the immigration judges are instead bound by the board's policy announced in matter of Yahouri Hurtado, even though they are a party to this case, even though an article three court has already issued a judgment. So what is left for the district court to secure compliance? And that is to confirm that the logic, the rationale that they relied on is faulty and to vacate the agency's rule that's announced in Yahouri Hurtado. The point I'd make there is defendants essentially argue that they can insulate their own executive agency policies by issuing it through a board decision. They wouldn't, they would not, I don't think, dispute that a court can set aside or vacate an unlawful agency regulation. And yet here they are saying a district court cannot set aside or vacate a rule announced through the adjudicatory process, the board's decision, even though it's not even announced, that decision is not even announced on an issuing removal order that proceeds through a petition for a review process. So what they ask is for this court to accept that a BIA decision is invulnerable to a district court's judgment, that a district court cannot set that aside. And there's no support for that theory. The question whether the district court exceeded her authority by subsequently vacating the decision after the appeal is, again, goes to the heart of what she did. Did she alter or amend the judgment that's already on appeal before this court? And we would submit she did not because she did not alter her analysis of 1226 versus 1225. That doesn't in any way modify the issues that are before this court on appeal. This court is still plainly positioned to rule on the same questions that were originally presented. Instead, the district court did the only thing that was left for her to do to try to secure compliance with the original order. All this was brought about because defendants' refusal to comply essentially denies bedrock principles of our legal system, and that is that they are bound by a final decision of this court. Did the district court have any other avenues for relief assuming that she believed that the government was defying her order? So far, we have failed to discover additional avenues that would have secured compliance. In different laws, in Rodriguez-Vazquez, the other class before this court, the same problem has presented itself as defendants have repeatedly refused to abide by the district court's judgment. And of course, we've sought notice and other procedural mechanisms, but defendants refused to comply with the judgment. And instead, you had the chief immigration judge issuing a directive to all the immigration judges in the country, justifying their refusal to comply by the fact that Yajurri Hurtado has not been vacated. And so, given that that was the express reason that they justified their failure to comply, the district court was within her authority under 28 U.S.C. 2202 to issue further relief that was necessary or proper. Doesn't this, I mean, start to wind back into some of the because the district court, one thing the district court can do is grant habeas relief with respect to petitioners that are within the jurisdiction of the district court. And so, doesn't some of this discussion sort of speak to some of those broader questions we've been talking about earlier? I would disagree in that the broader question is defendants' contention that a class action interferes with the independent judgments of other judges. And you can talk about the pros and cons of Rule 23, but the rule provides that for those individuals who satisfy the requirements, that they are entitled to obtain class certification. And 23b2 exists precisely to address an issue where a party has acted or refused to act in a manner consistent with an entire class. And defendants' refusal to abide by that declaratory judgment is what causes the needs for habeas petitions. But the district court is not ordering anyone's release under this class. It's only clarifying the legal principle, the legal statute that governs in their proceedings. Would this, if we sever the habeas portion and look to the class relief under 1252e, wouldn't this case for the relief you're asking for be most proper in the district court of the District of Columbia? And no, and I think this is most clearly demonstrated by the Supreme Court's decision in Jennings v. Rodriguez. There you had a class out of the Central District of California. Jennings v. Randolph, right? I'm sorry? Did you say Jennings v. Rodriguez? Jennings v. Rodriguez. There you had a class certified out of the Central District of California challenging detention under 1225. There was no dispute. Everyone acknowledged they were disagreeing with the merits of it, had no qualms with their ability to certify that class, even though it's under 1225. As this court has explained in cases like East Bay Sanctuary, 1225e is addressing expedited removal orders and the proceedings related to that. And in Jennings, the court explained the challenges to detention are separate and they don't fall within the jurisdiction channeling provisions of 1252. In Jennings, they focus most specifically on 1252b9, but it was that same principle that the challenge to detention is apart from. Even though in a broader sense, you could say it arises because of the removal proceedings, the court said we shouldn't embrace that capacious and broad interpretation that leads to absurd results. And likewise, in East Bay Sanctuary, this court has already held that 1252e should not include or does not encompass broader concepts like detention that go beyond the expedited removal order process. So again, the Supreme Court's decision in Jennings v. Rodriguez dealt with a class certified out of the Central District of California that included individuals who are detained. Did it pass on this particular aspect? It did not. It did not pass on 1252e, but in its analysis of another channeling provision in 1252b9, that same analysis applies here. And you would assume that the court, who has a responsibility to determine its own jurisdiction, would have been aware in that very same section if 1252e, in fact, were a significant hurdle. And of course, subsequent to that, we have this court's decision in East Bay Sanctuary, again, confining the limits of 1252e with respect to class certification, with respect to how broad it goes beyond challenges to the expedited removal order process. I would just briefly turn to the other primary factor in any emergency stay process, and that is, of course, the irreparable harm that the government contends that they're suffering. The government waited two months to file its motion for emergency stay after the district court certified the judgment for this class, after the class certification. That directly undercuts their argument that they're suffering irreparable harm. In fact, their argument is premised upon, again, this badly mistaken theory that a declaratory judgment is not binding on them. Moreover, the district court's judgment simply restored the status quo of the last 30 years. How is the government able to demonstrate irreparable harm when, for the last 30 years, ever since the date of enactment, this is the process that was in place, that 1226 applies to the detention of class members? Finally, with respect to irreparable harm, even accepting the district court's order, it does not require the release of any class member. Instead, it simply requires that when requested, an immigration judge must individually consider whether the continued detention is of any class member. All of these points drastically undermine any argument that the government might have that they are now facing irreparable harm and that there should be an emergency stay. Instead of waiting for the normal course, this court has set the briefing schedule and will resolve these issues shortly as we move forward with this case. We've let you go a bit over, and so I want to either see if my colleagues have further questions or just go ahead and ask you to go ahead and conclude. Thank you for your time. Thank you. Thank you, Your Honors. Five quick points, if I might. First, I think there's no denial whatsoever that they are completely challenging the government's authority to detain someone under 1225. They say that authority doesn't exist whatsoever. And indeed, many district judges are not just ordering bond hearings, they're ordering outright relief based on the 1225 theory, because they believe 1225 and 1226 are distinct. And by ruling on the 1225 issue, they're ordering outright release rather than the granting of a bond hearing. So I think very much what you have here is a frontal assault on the detention authority being used, and it can and does result in release. Second, I heard an attempt to distinguish JGG on the basis that they're only seeking additional procedures and not challenging their detention. I think that's wrong because they are challenging under 1225, but even if their premise were right, the conclusion wouldn't follow. JGG also involves a challenge seeking additional procedures, specifically a due process challenge asking for additional procedures to challenge their designation under the TDA. That is presently being litigated in the Fifth Circuit in the WMM and AARP cases in habeas. And so even if it were the case that additional procedures were a basis for distinction, it doesn't exist here because it was also the case in JGG. The cases are on all fours. Third, I think there's just a fundamental misunderstanding of what JGG did. I think they think that it's something that it's AEA-specific, but it really is not. What JGG fundamentally did is extend the rule of Heck v. Humphrey to EPA challenges. That, in a nutshell, is what it does. It's not AEA-specific. It applies a long line of cases that are, you know, most notably Heck v. Humphrey that says that any challenge, whether it's damages or some other sort of collateral relief that even implies the invalidity of your detention, has to be brought in habeas because that's where it sounds. And so I don't think their attempt to distinguish it based on the AEA and say the AEA largely precludes jurisdictional review works. But even if it could, the INA actually is one of the most impressive constellations of jurisdiction stripping and channeling provisions you've ever seen in Section 1252. It's just one after another restricting or channeling judicial review in a way that is comprehensive. You're going to see in any statute. So even if JGG were limited to challenging detention under statutes that largely preclude judicial review, the INA is just such a statute. You know, fourth, I think that they're trying to say the basis for the district court's enforcement order was the government's putative failure to comply with the declaratory judgment. We think there wasn't jurisdiction at all, but we also don't think that that, we also think that's an error of law. A declaratory judgment is not a coercive remedy. It does not require parties to do anything. It may control future proceedings because it could have collateral estoppel, erased judicata effects, but it does not require compliance. There's not something to violate. There is a declaratory judgment that might control other proceedings. So the premise that you can punish the government for putative non-compliance with a declaratory judgment is something of an oxymoron. A declaratory judgment is not a coercive order, and thus you do not violate it by not following it or not internalizing worldview in your future decisions. And finally, if I can just point out, the decision blow is causing chaos, which I think they somewhat poo-pooed, but is a very real thing. You have district judges in the Western District of Texas, for example, saying, I'm not bound by the Fifth Amendment. It fundamentally upends the careful regional structure that Congress has provided for federal courts. And notably, they say this is all, the enforcement order was appropriate because the government's not following it. But the logic of their argument is that even though the government has won in the Fifth and Eighth Circuits, precedential decisions of circuit courts, it's out of luck because one district court, one district judge in the Central District of California, has ruled otherwise. And somehow that controls over the precedential effects and the supervision that the Fifth and Eighth Circuits exercise over district courts within their jurisdictions. You know, I very much suspect this court wouldn't appreciate district courts in other circuits attempting to preempt its, you know, authority over district courts within the Ninth Circuit. And so we think that, you know, that certainly there are principles of comedy that were just absolutely rejected here, but it's very much in the public interest not to allow this sort of judicial chaos to prevail. Okay. Thank you very much, Mr. Renson. Mr. Adams, thank you very much. This matter is submitted and we're adjourned for the morning.
judges: McKEOWN, BEA, BRESS